# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA – FRESNO DIVISION

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., | CASE NO. 1:10-cv-01544-AWI-SKO |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |
| v. | |
| BRAULIO GAMINO, et al., | (Docket No. 11) |
| Defendants. | **OBJECTIONS, IF ANY, DUE WITHIN 15 DAYS** |

## I. INTRODUCTION

On December 3, 2010, Plaintiff, Joe Hand Promotions, Inc. ("Plaintiff"), filed the present motion for default judgment against Defendants, Braulio Gamino and Maria Tomasa Soto, individually and dba Los Metates Authentic Mexican Food ("Defendants"). (Doc. 11.) The motion was referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. This matter was taken under submission pursuant to Local Rule 230(g), and the January 12, 2010, hearing is VACATED.

## II. FACTUAL BACKGROUND

Plaintiff filed the instant action on August 26, 2010. (Doc. 1.) The complaint alleges violations of 47 U.S.C. §§ 605 and 553, as well as causes of action for conversion and for violation of California Business and Professions Code section 17200, *et. seq*. The suit is based on

Defendants' alleged unlawful interception, receipt, and exhibition of *"Ultimate Fighting Championship 102: Randy Couture v. Antonio Rodrigo Nogueira"* (the "Program"), a mixed martial arts match that took place and was broadcast on August 29, 2009. (Doc. 1, ¶¶ 10, 13.) According to the complaint, Plaintiff was the exclusive commercial distributor of the Program. (Doc. 1, ¶ 10.)

Count I of the complaint asserts a violation of 47 U.S.C. § 605 (Unauthorized Publication or Use of Communications), alleging that Defendants knowingly intercepted, received, and exhibited the Program for purposes of direct or indirect commercial advantage or private financial gain. (Doc. 1, ¶¶ 9-18.) Plaintiff seeks $110,000 in statutory damages as well as attorneys' fees and costs. (Doc. 1, ¶ 37.) Count II alleges a violation of 47 U.S.C. § 553 (Unauthorized Reception of Cable Services) based upon the same allegations. (Doc. 1, ¶ 19-23.) Plaintiff requests $60,000 in statutory damages, as well as attorneys' fees and costs. (Doc. 1, ¶ 23.) Count III states a claim for conversion alleging that Defendants tortiously obtained possession of the Program and wrongfully converted it for their own benefit. (Doc. 1, ¶¶ 24-27.) As to Count III, Plaintiff seeks compensatory damages, exemplary damages, punitive damages, attorneys' fees, and costs. (Doc. 1, ¶ 27.) Count IV of the complaint alleges a violation of California Business & Professions Code § 17200, *et. seq*. (Doc. 1, ¶¶ 28-37.) As to Count IV, Plaintiff seeks restitution, declaratory relief, injunctive relief, attorneys' fees, and costs of suit. (Doc. 1, ¶ 37.)

On October 29, 2010, the summons as to Defendants Braulio Gamino and Maria Tomasa Soto was returned showing that service of the summons and complaint was executed on October 9, 2010. (Docs. 5, 6.) Defendants failed to respond to the complaint by the November 1, 2010, due date. On November 16, 2010, pursuant to Plaintiff's request, the Clerk entered default against all individual Defendants. (Docs. 8, 9.) On December 3, 2010, Plaintiff filed this motion for default judgment against Defendants. (Doc. 11.) Defendants did not oppose the motion.

### III. DISCUSSION

**A.     Legal Standard**

Federal Rule of Civil Procedure 55(b)(2) provides that judgment may be entered as follows:

> By the Court. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has

appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals – preserving any federal statutory right to a jury trial – when, to enter or effectuate judgment, it needs to:

    (A)    conduct an accounting;
    (B)    determine the amount of damages;
    (C)    establish the truth of any allegation by evidence; or
    (D)    investigate any other matter.

Upon default, the well-pleaded allegations of the complaint relating to liability are taken as true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987); *Dundee Cement Co. v. Highway Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983).

Factors considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

**B.     Analysis**

Service of summons and complaint in this action was made on Defendants on October 9, 2010. A copy of the Proof of Service was filed with this Court on October 29, 2010. Defendants failed to respond to the complaint or otherwise appear in the action. The Clerk of the Court entered default against Defendants on November 16, 2010. Defendants are not infants or incompetent persons, and are not in the military service or otherwise exempted under the Soldiers' and Sailors' Civil Relief Act of 1940. (Doc. 11-2, ¶ 3.)

In its motion, Plaintiff seeks default judgment and an award of damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) (statutory damages) and 47 U.S.C. § 605(e)(3)(C)(ii) (enhanced statutory damages) in the amount of $110,000 against each Defendant for unlawfully intercepting, receiving, and exhibiting the Program on August 29, 2009, at their restaurant/bar. Plaintiff also seeks damages in the amount of $925 for its state law conversion claim.

**1.   Statutory Damages Pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) and Enhanced Statutory Damages Pursuant to 47 U.S.C. § 605(e)(3)(C)(ii)**

Plaintiff seeks statutory damages pursuant to 47 U.S.C. § 605(e)(C)(i)(II) and enhanced statutory damages pursuant to Section 605(e)(3)(C)(ii). (Doc. 11, 6:15-16; 10:1-2.) Pursuant to Section 605(a), no person receiving, assisting in receiving, transmitting, or assisting in transmitting any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission of reception. Those who violate this Section are subject to the following civil penalty:

> [T]he party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just, and for each violation of paragraph (4)[1] of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just.

47 U.S.C. § 605(e)(3)(C)(i)(II).

Plaintiff attests that it is a closed-circuit distributor of sports and entertainment programming that purchased and retained the exclusive commercial exhibition licensing rights to the Program at issue. (Doc. 12, ¶ 3.) Plaintiff marketed the sub-licensing (commercial exhibition) rights in the Program to its commercial customers. (*Id*.) Plaintiff contends that persistent signal piracy of its programming costs the company, its customers, and the community millions of dollars annually. (*Id*. ¶ 12.) Plaintiff believes that the continued signal piracy occurs, in part, due to the perceived lack of consequences (including nominal or minimal damage awards by the courts who hear its cases) for such unlawful interception and exhibition by the commercial signal pirates. (*Id*.) As such, Plaintiff requests that it be awarded the maximum allowance for statutory violations, totaling $10,000.

Plaintiff also notes that it has filed suit against these particular Defendants in another matter (Case No. 1:10-cv-01706-OWW-DLB)[2] for similar acts of piracy. (Doc. 11-4, ¶ 4.) Plaintiff contends that significant enhanced statutory damages should be awarded under Section

---

[1] Paragraph 4 relates to persons who manufacture, assemble, modify, import, export, sell, or distribute any device or equipment knowing that the equipment is primarily of assistance in the unauthorized description of satellite cable programming. Plaintiff does not assert that Paragraph 4 applies in this case.

[2] To date, while default has been entered, final judgment is still pending in that action.

605(e)(3)(C)(ii) because Defendants are repeat offenders. Section 605(e)(3)(C)(ii) provides the following:

> In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section.

Emphasizing the need for deterrence as to these Defendants and others, Plaintiff requests that it be awarded $100,000 in enhanced statutory damages.

Here, the summons and the complaint were properly served upon Defendants, their defaults were properly entered, and the complaint is sufficiently well-pleaded. *See Eitel*, 782 F.2d at 1471-72. By their defaults, Defendants have admitted to willfully violating Section 605 for the purposes of commercial advantage. *See TeleVideo Sys., Inc.*, 826 F.2d at 917-18. The facts before the Court indicate that Defendants' establishment was not large, with a maximum capacity of 75 people. (Doc. 11-3.) Gary Gravelyn, Plaintiff's investigator, noted that there were three flat screen televisions, each measuring between 42 and 50 inches, on the night the Program was broadcast. (*Id.*) One was located on a wall facing the tables, and the other two were on a wall near the bar. Gravelyn conducted three headcounts in the bar while he was there, with twenty-two people in the first count, twenty-two people in the second count, and twenty-four people in the last count. (*Id.*)

Even though as few as twenty-two people were counted at the bar when the Program was aired, the relatively small impact of Defendants' actions must be balanced against other factors including that: (1) Plaintiff has filed another suit against Defendants for other similar and additional acts of piracy,[3] and (2) the amount of damages awarded should be in an amount that is adequate to deter these Defendants and others from committing similar acts in the future. Considering these factors, the Court recommends that the maximum allowable statutory damages be awarded pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) in the amount of $10,000. The Court also recommends that enhanced statutory damages be awarded pursuant to Section 605(e)(3)(C)(ii) in the amount of $25,000.

---

[3] *See* Case No. 1:10-cv-01706-OWW-DLB. No judgment has been entered in that case.

**2. Damages for Conversion**

Plaintiff seeks $925 in conversion damages – the value of the property at the time of the conversion.

Under California law, conversion is the wrongful exercise of dominion over the property of another. The elements of conversion are "the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages." *Greka Integrated, Inc. v. Lowrey*, 133 Cal. App. 4th 1572, 1581 (2005); *see also G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir. 1992). "Because conversion is a strict liability tort, questions of the defendant's good faith, lack of knowledge, motive, or intent are not relevant." *Gilman v. Dalby*, 176 Cal. App. 4th 606, 615 n.1 (2009). Exclusive right to distribute a broadcast signal to commercial establishments constitutes a "right to possession of property" for purposes of conversion. *See Don King Prods./Kingvision v. Lovato*, 911 F.Supp. 419, 423 (N.D. Cal. 1995) (misappropriation of intangible property without authority from owner is conversion); *see also DIRECTV, Inc. v. Pahnke*, 405 F. Supp. 2d 1182, 1189 (E.D. Cal. 2005) (concluding that the right to distribute programming via satellite constituted a right to possession of personal property for purposes of a conversion claim under California law).

Here, Plaintiff was granted the exclusive domestic commercial exhibition licensing rights to the program at issue, and thus had the right to possession of the property at the time of the conversion. Because Defendants did not legally purchase the Program, the exhibition of the fight in Los Metates Authentic Mexican Food on August 29, 2009, constituted conversion by a wrongful act or disposition of property rights. Finally, the rate card for the Program at an establishment with a seating capacity of between 51 and 100, which would apply to Defendants' establishment, indicates the sub-license fee for the Program would have been $925. (Doc. 12, ¶ 8.) Thus, Plaintiff is entitled to damages for conversion in the amount of $925.

///
///
///
///

## IV. RECOMMENDATION

Based on a consideration of the declarations, pleadings, and exhibits to the present motion, the Court RECOMMENDS as follows:

1. Plaintiff's motion for default judgment be GRANTED;
2. Judgment be entered in this action against Defendants Braulio Gamino and Maria Tomasa Soto, individually and dba Los Metates Authentic Mexican Food, as follows:
   a. $10,000 statutory damages for violation of 47 U.S.C. § 605;
   b. $25,000 enhanced statutory damages for violation of 47 U.S.C. § 605; and
   c. $925 for the tort of conversion.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fifteen (15) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   January 7, 2011**                         /s/ Sheila K. Oberto
                                                                        UNITED STATES MAGISTRATE JUDGE